**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**AMERICAN AGGREGATE COMPANY, Inc., and Featherlite Corporation, Respondents.**

**No. 18290.**

United States Court of Appeals Fifth Circuit.

Aug. 11, 1964.

Marcel Mallet-Prevost, Asst. Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Rosanna A. Blake, Jules H. Gordon, Attys., N.L.R.B., Washington, D. C., for petitioner.

John Edward Price, Fort Worth, Tex., for respondents.

Before HUTCHESON, PRETTYMAN * and JONES, Circuit Judges.

HUTCHESON, Circuit Judge.

This is a civil contempt proceeding. In a per curiam opinion entered December 20, 1960, reported in 5 Cir., 285 F. 2d 529, this court held that there was substantial evidence on the record to sustain the National Labor Relations Board's findings that respondent had violated the act. An enforcement order was entered on January 20, 1961, requiring respondent to bargain with the union in good faith. On November 16, 1962, the Board petitioned this court to adjudge respondent in civil contempt. A master was appointed, hearings were held, the master filed findings of fact and conclusions of law in effect finding the respondent guilty of civil contempt in the particulars named by him, and respondent has filed objections to, and seeks rejection of, the master's report and its finding of contempt of this court. The Labor Board insists that the report should be approved.

It is now for the court to determine whether respondent is, as was found by the master, guilty of civil contempt of this court's order by failing to bargain in good faith with the union.

---

* Of the District of Columbia Circuit, sitting by designation.

■ The record made at the hearing before the master of thirty-two bargaining meetings leaves in no doubt that management and union were, because of the unwillingness of each to surrender positions each took in the bargaining, on non-converging courses, and that each was unwilling and/or unable to find a common meeting ground with the other on many of the proposals each made. It is equally clear, however, that the record furnishes no basis for the finding of the master that the conduct and actions of management were in contempt of this court's decree. On the contrary, without finding it necessary to determine whether management or union was most adamant in refusing to surrender positions taken in the course of bargaining sessions, we think it clear that the record does not support the finding and conclusion of the master[1] that management was guilty of refusing in good faith to bargain, and, therefore, was in contempt of this court's decree, but, on the contrary, requires the finding that management was merely endeavoring, as it had a right in law to do, to have the bargaining go as it wished it to do rather than being required to yield to the views of, and the demands made upon it by, the union.

■ In this situation, the unwillingness of management to surrender the assertion of its rights of management by agreeing to the union's wishes to curtail them, does not in any respect violate the law. This was definitely settled and laid to rest by this court in American National Insurance Co. v. N.L.R.B., 5 Cir., 187 F.2d 307, affirmed on full discussion in 343 U.S. 395, 72 S.Ct. 824, 96 L.Ed. 1027.[2]

■ We, therefore, reject the contention of the Board and the conclusion of the master, note 1, supra, that though the respondent was not obligated to agree on any particular matter at issue between it and the board, it can be compelled so to agree by the device of making the right of management to insist upon its own decision of disputed issues depend upon whether the decision of management not to agree with the union appears to the board and the master to be capricious or not well advised. The Supreme Court, in National Labor Rela-

[1] "While there is no way under the provisions of the Labor Relations Act on which the Company can be forced to sign a contract which is not acceptable, the fast and loose way in which the Company acted with respect to this proposed contract in February, 1962, and in June, 1962, is evidence of lack of good faith on the part of the company to bargain collectively with the Union to negotiate a contract. It is quite apparent from this evidence that Mr. Kingsbury was opposed to making any agreement with the union which by its terms hampered and restricted him in dealing with his employees with respect to wages, hours, and conditions of employment." (From the Report of the Master, page 51)

[2] There the Supreme Court said, at page 404, 72 S.Ct. at page 829:
"In 1947, the fear was expressed in Congress that the Board 'has gone very far, in the guise of determining whether or not employers had bargained in good faith, in setting itself up as the judge of what concessions an employer must make and of the proposals and counter-proposals that he may or may not make.' Accordingly, the Hartley Bill, passed by the House, eliminated the good faith test and expressly provided that the duty to bargain collectively did not require submission of counter-proposals. As amended in the Senate and passed as the Taft-Hartley Act, the good faith test of bargaining was retained and written into Section 8(d) of the National Labor Relations Act. That section contains the express provision that the obligation to bargain collectively does not compel either party to agree to a proposal or require the making of a concession.
"Thus it is now apparent from the statute itself that the Act does not encourage a party to engage in fruitless marathon discussions at the expense of frank statement and support of his position. *And it is equally clear that the Board may not, either directly or indirectly, compel concessions or otherwise sit in judgment upon the substantive terms of collective bargaining agreements.*" (emphasis supplied)

tions Board v. American Insurance Co., 343 U.S. 395, 72 S.Ct. 824, note 2, supra, has precisely decided to the contrary, that neither board nor court has any power or function to order or compel management to agree to particular clauses or demands merely because the Labor Board or a court might think that the refusal to agree was unreasonable.

It is quite clear that this court did not, in directing enforcement of the board's order, actually or impliedly transgress or authorize the board to transgress the statutes forbidding such compulsion.

The board's brief, in support of the master's findings, while acknowledging that the respondent held thirty-two bargaining conferences with the union in which practically every matter in dispute was discussed, seems to urge that, because in these conferences the respondent did not agree to terms which the union demanded and the board thought reasonable and proper, the master, by the device of characterizing respondent as shadow boxing or acting fast and loose, could condemn the respondent as in violation of this court's decree merely because it did not agree to terms which the master thought it ought to have agreed to. This will not at all do. We, therefore, specifically disagree with the conclusion of the master:

> "It is concluded that the refusal on the part of the company to make a contract with the union as to the number of hours per week the employees may be required to work, as indicated above, is a refusal to bargain in good faith with the union on the number of hours of work in violation of the said order entered by this court on January 20, 1961."

and approve the characterization of it by respondent in its brief at page 4:

> "Three things are wrong with this conclusion: First, respondent did not refuse to make a contract with the union as to the number of hours per week the employees may have been required to work. Respondent proposed to the union a maximum hour schedule, but refused the union's demand for a minimum work week of 48 hours. By the use of general and precise language the Special Master has incorrectly stated the issue upon which the negotiations foundered. Also, by concluding as he has, the Special Master has ignored the precise issue in these proceedings which was posed by the pleadings. Second, failure of the parties to agree was due as much to the union's refusing respondent's demand that there be no guarantee of hours of work as to respondent's refusing the union demand. Third, respondent was within its legal rights to refuse the particular union demand that was in issue and consequently the refusal cannot be held to be illegal. N.L.R.B. v. American National Ins. Co., 343 U.S. 395, [72 S.Ct. 824] LRRM 2147."

We specifically disapprove and reject the master's conclusion that respondent is in contempt of this court and order the contempt proceeding dismissed.